## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ANTHONY L. McKINNEY,**

**Petitioner,**

**CASE NO. 2:09-CV-00498**
**JUDGE EDMUND A. SARGUS, JR.**

**v.**

**Magistrate Judge E.A. Preston Deavers**

**WARDEN, WARREN CORRECTIONAL
INSTITUTION,**

**Respondent.**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the instant Petition, Respondent's Return of Writ, Petitioner's Reply and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> The facts showed that on October 13, 2005, four individuals-Terrance Barbour, Sherman Justice, Terrell Craig, and Jermaine Freeman-drove to an apartment building located at 3676 Cleveland Avenue. The purpose for this trip was to visit Barbour's cousin, "Timmy," and to plan a party celebrating Barbour's release from the Department of Youth Services. When they arrived at the apartment building, three people were in the parking lot, one of whom was identified by Craig and Freeman as appellant. There was a brief confrontation between the two groups at that time.
>
> The four discovered that Timmy had moved out of his apartment in the building to another apartment on the other side of Cleveland Avenue. The group found Timmy's apartment and visited him for a brief time. As they exited Timmy's apartment, the group was confronted by an individual named Mickey Hairston. Hairston had a

gun, and argued with Barbour.

The group went back across Cleveland Avenue to return to their car so they could leave. As they passed through the apartment building, Craig saw Hairston hand a gun to appellant. As Craig got into the driver's seat of their car, he saw appellant, who was standing in the doorway from which the group had just exited the apartment building, begin firing the gun towards him and his group. Craig started to pull the car out of its parking space when he saw that Barbour had been hit by gunfire. Barbour had been struck in the neck by a bullet, and ultimately died from blood loss. In addition, Justice had been shot in the leg.

Deputy Brian Jackson of the Franklin County Sheriff's Office arrived at the scene shortly after the shooting. Jackson spoke to Craig, who gave a description of the person he had seen firing the gunshots. Craig actually described two people, "a dark heavyset black dude with braids and a short brown-skinned dude with braids." (Tr. at 180.) Jackson then began searching the area in his cruiser, looking for anyone who matched the descriptions he had been given. Jackson began his search along Cleveland Avenue south of the buildings because he had been told the shooter had run in that direction.

Jackson saw appellant, who fit the first description Craig had given, exiting a drive-through carryout at Northern Lights Shopping Center. Jackson stopped appellant so he could question him about any possible knowledge of the shooting. Appellant was initially evasive about where he was going and his address, but ultimately gave his address as one of the apartments in the building at which the shooting had occurred. Appellant stated that, "I don't have anything to do with that." When asked to what he was referring, appellant said, "[w]hatever's going on over there." (Tr. at 78.) Jackson then put appellant in the back of his cruiser and returned to the scene of the shootings. Craig was then asked if he could identify appellant, and Craig identified appellant as the person who had fired the gunshots. Freeman later identified appellant as the shooter in a photographic array. Appellant was arrested, and his clothes were taken for testing, which revealed the presence of gunshot residue.

Appellant was indicted by a grand jury on one count of murder with a firearm specification; three counts of felonious assault, each with firearm specifications; and one count of having a weapon while under disability. After trial, a jury convicted appellant of all of the charges.

2

*State v. McKinney,* No. 06AP-510, 2007 WL 1153077, at *1-2 (Ohio 10th App. April 19, 2007).  The

trial court sentenced Petitioner to an aggregate term of twenty-eight years to life.  *Exhibit 2 to Return*

*of Writ.*  Petitioner filed a timely appeal, in which he raised the following assignments of error:

> First Assignment of Error
>
> The State's belated disclosure of favorable, material evidence deprived Appellant of a fair trial because the disclosure was too late to permit counsel to use it effectively at trial.
>
> Second Assignment of Error
>
> Appellant's convictions are contrary to the manifest weight of the evidence.

*Id*. at *2.  On April 19, 2007, the appellate court affirmed the trial court's judgment.[1]  *Id*.  On

September 26, 2007, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v.*

*McKinney*, 115 Ohio St.3d 1412 (2007).

> In the meantime, defendant, on March 19, 2007, filed a petition for post-conviction relief pursuant to R.C. 2953.21. Defendant contended his trial counsel was ineffective in failing to call three specific witnesses whose testimony would have demonstrated defendant was not the person who fired the shot killing Terrance Barbour. Attached to defendant's petition was a letter from the Ohio Public Defender's Office declining to represent defendant in his post-conviction proceedings. Defendant's petition, however, requested the opportunity to amend the petition to include evidence defendant gathered to support it.
>
> As indicated in his original petition, defendant on April 7, 2007 filed a motion for leave to amend his petition, requesting an extension of 110 days to gather supporting materials. The trial court granted his motion, and on July 11, 2007, defendant filed his amended petition. Attached to the amended petition were (1) defendant's own affidavit

---

[1]  On July 8, 2008, Petitioner filed an application for reconsideration.  *Exhibit 31 to Return of Writ*.  On August 12, 2008, the appellate court denied Petitioner's application.  *Exhibit 33 to Return of Writ*.  On December 31, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *Exhibit 36 to Return of Writ.*

explaining his inability to produce supporting documentation, and (2) letters from his girlfriend explaining her attempts to assist him. By judgment entry filed September 25, 2007, the trial court denied defendant's petition for post-conviction relief filed on March 19, 2007, as well as his amended petition filed July 11, 2007. Defendant appeals, assigning the following errors:

FIRST ASSIGNMENT OF ERROR

Ineffective Assistance of Counsel A violation of the Sixth Amendment Trial Counsel failed to call 3 defense witnesses

SECOND ASSIGNMENT OF ERROR

Ineffective Assistance of Counsel A violation of the Sixth Amendment Trial Counsel failed to Investigate and introduce 3 defence [sic] witnesses

THIRD ASSIGNMENT OF ERROR

Ineffective Assistance of Counsel A violation of the Sixth Amendment Trial counsel failed to play recordings after prosecutors [sic] side bar

FO[U]RTH ASSIGNMENT OF ERROR

Ineffective Assistance [of] Counsel A violation of the sixth Amendment Trial counsel failed to call 3 defense witnesses even after our one witness the vi [c]tim was made to look bad by the prosecutor for lying at another court room

*State v. McKinney*, No. 07AP-868, 2008 WL 747716, at *1-2 (Ohio 10th App. March 20, 2008). On March 20, 2008, the appellate court affirmed the trial court's judgment. *Id*. On July 9, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. McKinney*, 118 Ohio St.3d 1510 (2008).

On July 16, 2007, Petitioner also filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal the following claims:

1.      The trial court erred by allowing prosecution to amend the indictment under Crim. R. 7(D) allowing the name or identity to be changed in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

2.      Appellate counsel failed to raise trial counsel's ineffectiveness for failure to suppress identification that derives from impermissibly suggestive procedures that lead to an irreparably mistaken identification in violation of the Due Process Clause of the Fifth and Sixth Amendment.

*Exhibit 25 to Return of Writ.*  On September 27, 2007, the appellate court denied Petitioner's Rule 26(B) application.  *Exhibit 26 to Return of Writ.*  On January 23, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal.  *State v. McKinney*, 116 Ohio St.3d 1480 (2008).

On Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States as follows:

1.      The trial court constructively amended the indictment, resulting in McKinney being convicted of an offense that was not a lesser included offense of the offense charged in the indictment and for which he received no fair notice.

The indictment was amended to allow the jury to convict on a charge of felony murder (2903.02(B)) when it originally listed purposeful murder (2903.02(A)).

2.      The State's belated disclosure of favorable, material evidence deprived Petitioner of a fair trial because disclosure was too late to permit counsel to use it effectively at trial.

The State turned over a police witness summary from Carlene Evans that indicated that Petitioner was not the shooter.  This summary was not turned over until it was too late to investigate.

3.      Petitioner's convictions are constitutionally unsound because appellant counsel failed to call 3 witnesses that would have

exonerated Petitioner as the shooter.

Counsel failed to investigate or call 3 witnesses who would have testified that Petitioner was not the shooter.

4.      The indictment was structural error because it failed to allege a mens rea element.

The indictment failed to allege the requirement element of a mental state.

5.      Appellate counsel failed to raise trial counsel's ineffectiveness for failing to suppress identification testimony that derives from impermissibly suggestive procedures that lead to an irreparably mistaken identification in violation of the Due Process Clause of the Fifth and Sixth Amendment.

The identification procedures used were impermissible.

It is the position of the Respondent that Petitioner's claims are waived or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485

6

(1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule, then the petitioner must demonstrate good cause for his or her failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim one, Petitioner asserts that he was denied a fair trial and notice of the charges against him because the trial court purportedly constructively amended the indictment which resulted in a conviction on the charge of felony murder under Ohio Revised Code § 2903.02(B), when the indictment had initially charged him under Ohio Revised Code § 2903.02(A) for purposeful murder. In claim four, Petitioner asserts that the indictment contained no language regarding the requisite level of required *mens rea* associated with the crime, which constituted structural error. These claims, being readily apparent from the face of the record, should have been raised on direct appeal, but were not. Further, Petitioner may now no longer present these claims

7

to the state courts under Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d 112 (1982) ; *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).  The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Further, the State of Ohio has a procedural rule that claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.  The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991).  To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16.  Additionally, the

doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner contends that he has preserved claim four for federal habeas corpus review by presenting it to the state courts in a July 8, 2008 application for reconsideration of the appellate court's denial of his direct appeal. The state appellate court, however, denied his application as untimely, refusing to address the merits of this claim. *Exhibit 33 to Return of Writ.* Thus, this claim was not properly preserved for federal habeas review.

Petitioner may still obtain review of his claims on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violations. As cause for his failure to raise claim one on direct appeal, Petitioner asserts ineffective assistance of counsel. Such a claim may constitute cause for a procedural default, so long as the claim has been presented to the state courts, and is not itself procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000)(citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986)).

The state appellate court rejected Petitioner's claim of ineffective assistance of appellate counsel as follows:

> In his first proposed assignment of error, appellant argues that the trial court erred by granting the state's motion to amend the indictment to strike the word "purposely" from the portion of the indictment that charged appellant with murder. Crim. R. 7(D) provides that a court "may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change

is made in the name or identity of the crime charged."

The first count of appellant's indictment charged him with murder in violation of R.C. 2903.02, stating that appellant "did purposely cause the death of another, to wit, Terrance Barbour, as a proximate result of [appellant] committing or attempting to commit an offense of violence that is a felony of the first or second degree, to wit Felonious Assault[]" This language tracked the language of R.C. 2903.02(B), which sets forth the offense of murder in the context of the commission or attempted commission of a first – or second – degree felony, except that the indictment added the word "purposely."  The trial court allowed the state's motion to amend the indictment to strike the word "purposely."

The amendment to the indictment was for the purpose of deleting a word that was not a part of the actual crime charged.  Consequently, the amendment did not change the name or identity of the crime charged, and was therefore proper under Crim. R. 7(D).  Thus, there was no reasonable probability of success if appellate counsel had raised this issue on appeal.

*Exhibit 26 to Return of Writ.*

Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are presumed to be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

The state court's decision is binding on this Court unless that decision is contrary to or involves an

unreasonable application of clearly established federal law as determined by the United States

Supreme Court:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner has failed to meet this standard here.

The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id*., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( per curiam ).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855,1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett*, 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, 131 S.Ct.10 (Mem), 2010 WL 752363, at *2 (Nov. 1, 2010).  Petitioner has failed

to establish that the state appellate court's decision was contrary to or involved an unreasonable

application of clearly established law or was based on an unreasonable determination of the facts,

in violation of 28 U.S.C. § 2254.

Again, Petitioner asserts that he procedurally defaulted his claim because his counsel was ineffective in failing to raise it. The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 697. Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

The state appellate court concluded that amendment of the indictment did not violate state procedural rules. This Court defers to a state court's interpretation of its own laws. *See Adams v.*

12

*Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. Aug. 28, 2003)(citing *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975); *Israfil v. Russell,* 276 F.3d 768, 771 (6th Cir. 2001)).  Therefore, Petitioner has failed to establish prejudice from his attorney's failure to challenge amendment of the indictment as a violation of Ohio law.

Contrary to Petitioner's argument here, the record likewise fails to reflect a violation of federal law.  The initial charging document tracked the language from the statute it was later amended to reflect.  Petitioner's contention now, therefore, that he lacked adequate notice  of the elements of the offense charged fails.  "[D]efects in an indictment do not deprive the court of the power to adjudicate the case."  *See United States v. Cotton,* 535 U.S. 625, 629-30 (2002). Procedural due process requires that the indictment: "(1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *Joseph v. Coyle,* 469 F.3d 441, 463 (6th Cir. 2006) (quoting *Valentine v. Konteh,* 395 F.3d 626, 631 (6th Cir. 2005)); *see also Cole v. Arkansas,* 333 U.S. 196, 20 (1948). The law is clear that "[b]eyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002) (citing *Mira v. Marshall,* 806 F.2d 636, 639 (6th Cir.  1986)). The Constitution only requires that whatever charging method a state employs, the state must give a defendant fair notice of the charges to permit adequate preparation of his defense, so "that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands  charged." *Olsen v. McFaul,* 843 F.2d 918, 930 (6th Cir. 1988).  Here, the indictment provided Petitioner fair notice of the charge against him which was sufficient to enable him adequately to prepare a defense.  The undersigned rejects Petitioner's contention that correcting a typographical error violated the Constitution.

Petitioner has failed to establish ineffective assistance of counsel based on his attorney's failure to raise the issue.

Thus, Petitioner has failed to establish cause for his procedural default of claim one.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

## CLAIM TWO

In claim two, Petitioner asserts that he was denied a fair trial because the prosecutor failed to timely disclose exculpatory evidence, *i.e.*, a police witness summary from Carmen Evans indicating she told police that Petitioner was not the shooter.  The state appellate court rejected this claim as follows:

> [A]ppellant argues that his due process rights were violated because the State provided him with exculpatory evidence ten days before trial, which he argues did not give him sufficient time to effectively use the exculpatory evidence at trial. Appellant argues that this belated disclosure violated his rights as set forth by the United States Supreme Court in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.
>
> Ten days before trial, the assistant prosecuting attorney became aware of a report that had been prepared by Lieutenant Mike Harrow of the Franklin County Sheriff's Office. In the report, Harrow indicated that shortly after the shootings, he had spoken to a woman named Carmen who worked at the apartment building. Carmen told him she had seen Hairston and another male known only as KL on the night of the shooting, holding their pants as if they had guns. She also said Hairston and another unknown black male took her from the scene, that both men smelled of gunpowder, and that Hairston hid a gun in one of the apartments and returned to retrieve it later that night.

14

The assistant prosecuting attorney informed defense counsel about the report as soon as it was found. Efforts to locate Carmen before trial were unavailing. Prior to opening statements in the trial, appellant made a motion to dismiss for the failure to disclose the evidence. Alternatively, appellant asked for a continuance of the trial date or for the opportunity to introduce Carmen's statement through Harrow. The trial court declined to dismiss the case or continue the trial date, but did allow appellant to call Harrow as a witness to testify about the substance of Carmen's statement. Prior to the conclusion of the trial, information was provided to defense counsel that Carmen had been located, and contact information was provided. Appellant did not call Carmen as a witness.

"Suppression by the prosecution of evidence that is favorable to the accused and 'material either to guilt or to punishment' is a violation of due process." *State v. LaMar,* 95 Ohio St.3d 181, 184, 2002-Ohio-2128, 767 N.E.2d 166, quoting *Brady, supra*, at 87. In examining the issue, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.,* quoting *Kyles v. Whitley* (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490.

 Ohio courts have generally held that there is no *Brady* violation when disclosure of the possibly exculpatory evidence is made before or even during trial. *State v. Iacona,* 93 Ohio St.3d 83, 2001-Ohio-1292, 752 N.E.2d 937. However, the courts have also recognized that in some instances there may still be a violation of due process rights if the timing of the disclosure significantly impairs the fairness of the trial. The issue becomes whether the *Brady* material was disclosed to the defendant in time for it to be effectively used at trial. *Id.,* quoting *United States v. Smith Grading & Paving, Inc. (C.A.* 4, 1985), 760 F.2d 527.

In this case, Carmen's statement was provided to defense counsel ten days before the start of trial, which provided the defense with ample time to attempt to locate her. Moreover, appellant became aware during trial that Carmen had returned to town and was given her contact information. Thus, appellant had the opportunity to call Carmen as a witness, but did not do so. More importantly, the trial court's decision to allow appellant to question Harrow about the substance of Carmen's statement allowed appellant to effectively use

the statement at trial. We cannot say that the State's disclosure of Carmen's statement ten days before the start of trial resulted in appellant being denied a fair trial. Therefore, we overrule appellant's first assignment of error.

*State v. McKinney,* 2007 WL 1153077, at *2-3.

In *Brady v. Maryland,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 86. Evidence is material "[i]f there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682 (1985). "There is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281 (1999). "Impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule." *O'Guinn v. Dutton,* 88 F.3d 1409, 1418 (6th Cir.1 996)(citing *United States v. Bagley).* "In the absence of prejudice, even assuming a violation of *Brady,* reversal is not required." *United States v. Jones,* 766 F.2d 994, 998 n.1 (6th Cir. 1985)(citing *United States v. Campagnuolo,* 592 F.2d 852, 861 & n. 9 (5th Cir. 1979)). "*Brady* generally does not apply to the delayed disclosure of exculpatory information, only to a complete failure by the prosecutor to disclose such information. *Carter v. Harry,* No. 07-12211-BC, 2010 WL 2772349, at *5 (E.D. Mich. July 13, 2010)(citing *United States v. Davis,* 306 F.3d 398, 421 (6th Cir. 2002)). Where evidence is disclosed prior to or during trial, no *Brady* violation occurs unless the defendant is prejudiced by the timing of the disclosure. *Id*. (citing *United States v. Word,* 806 F.2d 658, 665 (6th Cir.1986)). As discussed by

the state appellate court, the record reflects that the prosecutor provided Petitioner with the evidence that he complains he did not have ten days prior to trial. Moreover, Petitioner's counsel called Sheriff Mike Harrow as a defense witness to testify regarding Carmen's statements to police. *Trial Transcript,* at 394. She was located prior to the close of trial, and was available to testify as a defense witness. Defense counsel, however, chose not to call her as a witness in the case. *Id*. at 404-05. Under these circumstances, this Court agrees that Petitioner has failed to establish a violation of *Brady* or that he was prejudiced.

Claim two is without merit.

## CLAIM THREE

In claim three, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to call as defense witnesses, Genevieve Franklin, Micky Harriston and "Little Chicket," who allegedly were present at the time of the shooting and would have testified that Petitioner was not the shooter and did not match the general description of the shooter given to police. *Traverse*, at 23, 25. Petitioner states that his attorney told Petitioner that the foregoing witnesses would not have been credible witnesses due to their relationship to Petitioner. *Id.* The state appellate court rejected this claim as follows:

> Defendant contends his convictions are constitutionally unsound because his trial counsel was ineffective in failing to call three defense witnesses that defendant contends would have provided evidence exonerating him as the person who fired the gun killing Terrance Barbour.
>
> ***
>
> [D]efendant's petition fails to demonstrate that he is entitled an

17

evidentiary hearing, much less relief. Defendant attached to his original petition the letter from the Ohio Public Defender's office refusing to represent him in filing a petition for post-conviction relief. The letter does nothing to support defendant's contention that his trial counsel should have called three additional witnesses during defendant's trial.

Similarly, nothing but defendant's own affidavit supports his amended petition for post-conviction relief. While the affidavit attempts to explain defendant's difficulty in procuring affidavits from the witnesses, and to propose the testimony the witnesses would have offered if called to testify, his affidavit is insufficient. Defendant's difficulty in procuring the desired information is not a basis for the statutory relief defendant seeks. Moreover, his own affidavit purporting to delineate the testimony the three uncalled witnesses would have submitted attempts to verify information that is not within defendant's personal knowledge. As a result, the affidavit is not competent evidence to support defendant's petition. *State v. Silverman,* Franklin App. No. 06AP-1278, 2007-Ohio-6498; *State v. Jackson,* Franklin App. No. 01AP-808, 2002-Ohio-3330, at ¶ 45 (stating "[t]o overcome the barrier of res judicata, a petitioner must attach evidence dehors the record that is 'competent, relevant and material,' " and concluding an affidavit not made from personal knowledge is not admissible evidence); *State v. Gapen,* Montgomery App. No. Civ.A. 20454, 2005-Ohio-441.

Instead, to support his claim that three witnesses would have testified favorably to him, defendant needed to submit affidavits from those with personal knowledge about their potential testimony: the witnesses themselves. While defendant submitted letters from other persons explaining the difficulty in procuring the evidence defendant needed and suggesting "K.L." killed Barbour, none of the letters' authors submitted an affidavit, made from personal knowledge, stating defendant was not the shooter. See *State v. Patterson* (Sept. 23, 1999), Franklin App. No. 98AP-1369 (concluding a letter was insufficient support for a post-conviction petition).

Given the lack of evidentiary material to support defendant's petition, the trial court could not determine trial counsel was ineffective in failing to call the witnesses, as it was unable to ascertain what testimony those witnesses might have offered. Similarly, the trial court could not conclude defendant sustained any prejudice from the

> absence of those witnesses, as they provided no evidence to the trial court about their testimony had they been called as witnesses in defendant's trial. The trial court thus did not err in denying defendant's petition for post-conviction relief without first conducting an evidentiary hearing. Defendant's first, second, and fourth assignments of error are overruled.

*State v. McKinney*, 2008 WL 747716, at *3-4.  Again, the record fails to reflect that habeas corpus relief is warranted.  28 U.S.C. § 2254(d), (e).

As noted by the state appellate court, Petitioner's allegation that any potential witnesses would have provided exculpatory testimony at trial is without support in the record.  Petitioner submitted only his own affidavit in support of his post conviction petition in the state courts indicating that his girlfriend, Genevieve Franklin, would have identified "KL" as the gunman, but she had refused to provide a statement because she was in fear of "KL" who had hit her.  *Exhibit 13 to Return of Writ*.  According to Petitioner, "KL" had killed his friend, Mickey Harriston, who would have testified that Petitioner was not the gunman.  *Id*.  Little Chickey purportedly also would have testified that Petitioner was not the gunman.  *Id.*  Nothing in the record, however, supports Petitioner's self-serving allegations.  Petitioner therefore has failed to establish that the state appellate court's decision rejecting this claim warrants federal habeas corpus relief, 28 U.S.C. § 2254(d), (e), or ineffective assistance of counsel under *Strickland*.

Claim three is without merit.

## CLAIM FIVE

In claim five, Petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of ineffective assistance of trial counsel due to his attorney's failure to suppress unduly suggestive identification procedures that resulted in witnesses mistaken identification of Petitioner as the gunman.  The state appellate court

rejected this claim as follows:

> As for appellant's second proposed assignment of error, a reading of appellant's argument in support of the application to reopen shows that appellant is actually attacking the credibility of various witnesses that identified him as the shooter at trial. In our decision affirming appellant's convictions, we rejected appellant's claim that his convictions were against the manifest weight of the evidence. Consequently, appellant's argument in support of the application to reopen shows that appellant's second proposed assignment of error is an attempt to reargue issues already raised and rejected on appeal, and his attempt to reopen his direct appeal would therefore be barred by res judicata. . . .
>
> [E]ven if we were to accept that appellant's second proposed assignment of error is not an attempt to reargue issues already raised, nothing in appellant's application points to any evidence in the record that appellant objected at trial to the identification procedure used to identify him as the shooter. Failure to object to an identification procedure as unduly suggestive waives all but plain error. . . . There is nothing in the record to establish that the procedure by which appellant was identified as the shooter constituted any error, much less plain error. Consequently, there was no reasonable probability of success if appellate counsel had raised this issue on appeal.

*Exhibit 26 to Return of Writ*.[2]  In its dismissal of Petitioner's claim that his conviction was against

the manifest weight of the evidence, the state appellate court held in relevant part as follows:

> Appellant points to a number of evidentiary items in support of his claim that his convictions were against the manifest weight of the evidence. First, appellant argues that the two witnesses who specifically identified appellant as the shooter, Craig and Freeman, were not in a position to see that appellant was the person firing the shots because they were ducking down behind vehicles while the shots were being fired. In addition, in his initial statement to police investigators, Craig stated that he thought there were two shooters.

---

[2]  Respondent does not argue that claim five is procedurally defaulted. Accordingly, this Court will not address that issue. *See Trest v. Cain,* 522 U.S. 87, 89 (1997) (the failure to raise procedural default normally constitutes waiver of the default); *Gray v. Netherland,* 518 U.S. 152, 166 (1996) (procedural default ordinarily is an affirmative defense that is waived if not raised).

> Appellant also argues that Sherman Justice, who was shot in the leg, originally told police investigators that appellant was not the shooter. Finally, Tonia Justice, Sherman's mother, testified that Sherman, upon seeing appellant's picture as part of a television news story about the shooting, said that appellant was not the shooter.

> At trial, both Craig and Freeman unequivocally identified appellant as the shooter. Even though both were ducking down while the shots were being fired, each nevertheless testified to having been able to see appellant holding the gun and firing the shots. Further, both Craig and Freeman knew appellant prior to the shooting, thus making a mistaken identification less likely.

*State v. McKinney*, 2007 WL 1153077, at *3. Again, these findings are presumed to be correct, 28 U.S.C. 2254(e). The record fails to support Petitioner's arguments to the contrary. Review of the record reveals no basis to support a successful motion to suppress the in-court identifications of Petitioner as the perpetrator.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp,* 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A.   Were the omitted issues "significant and obvious?"

B.   Was there arguably contrary authority on the omitted issues?

C.     Were the omitted issues clearly stronger than those presented?

D.     Were the omitted issues objected to at trial?

E.     Were the trial court's rulings subject to deference on appeal?

F.     Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G.     What was appellate counsel's level of experience and expertise?

H.     Did the petitioner and appellate counsel meet and go over possible issues?

I.     Is there evidence that counsel reviewed all the facts?

J.     Were the omitted issues dealt with in other assignments of error?

K.     Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir. 1999). The Sixth Circuit cautioned that this list is not exhaustive and need not produce a certain "score." *Id.* at 428.

Identification testimony based upon a pre-trial procedure that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates a criminal defendant's right to due process. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986)(quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)); *see also Stovall v. Denno,* 388 U.S. 293 (1967). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers,* 409 U.S. 188, 198 (1972). The Court first must determine whether the pre-trial identification procedure employed was unduly suggestive. *Ledbetter v. Edwards,* 35 F.3d 1062, 1070-71 (6th Cir. 1994). If so, the Court must then consider the totality of the circumstances in order to determine if the identification is nevertheless reliable. *Id.* at 1070 (citations omitted). In making this determination, the Court must consider the following five factors:

22

(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Ledbetter,* 35 F.3d at 1070 (citations omitted).

A show-up, of the type used by police when Terrell Craig identified Petitioner as the shooter while Petitioner was seated in the back seat of the police car is inherently suggestive. *Summit v. Bordenkircher*, 608 F.2d 247, 252 (6th Cir. 1979). "When only one person is presented to a witness, there is a natural tendency for the witness to feel obligated to provide a positive identification." *Id.* The totality of circumstances, however, indicate that Craig's identification of Petitioner was constitutionally permissible.

Because defense counsel did not object to the in-court identifications of Petitioner, this claim, if raised on appeal, would have been reviewed for plain error only.  Further, Craig knew Petitioner prior to the shooting. *Trial Transcript*, at 149.  He had a good look at the shooter, whom he identified as Petitioner. *Id.* at 167.  He had no trouble viewing Petitioner during the time period at issue. *Id.* at 172.  It was day time. *Id*. at 178.  He was able to give a description of Petitioner to police, who arrived within minutes of the shooting. *Id.*  He described Petitioner as a dark heavy set black man with braids who was wearing a tight little hat on his head. *Id.* at 180, 205.  Petitioner was detained by police shortly thereafter.  Craig was one hundred percent certain of his identification of Petitioner as the shooter. *Id*. at 181.  He initially told police there were two shooters, because he saw Petitioner and Mickey Hairston standing in the doorway from which Petitioner was shooting. *Id*. at 182.  Craig was certain, however, that Petitioner was firing the gun. *Id.*

Similarly, Jermaine Freeman knew Petitioner as "Ant" prior to the day at issue and identified

him upon arriving in the parking lot on that day.  *Id*. at 228.  The day in question was bright and sunny.  *Id*. at 225.  Freeman corroborated Craig's testimony regarding the events at issue and described witnessing Petitioner standing in the doorway rapidly firing more than eight shots in succession as Freeman and his friends ran.  *Id*. at 242.  Freeman observed Petitioner holding an object and shooting.  *Id.* at 243.  He was very certain of his identification of Petitioner as the gunman and able to describe the clothes Petitioner was wearing at that time – a black tee shirt, and black gym shorts.  Further, he immediately identified Petitioner to police from a photographic line-up.  The record is without support for Petitioner's allegation that the photographic array used by police, or their procedure in obtaining Freeman's identification, was unduly suggestive.

Petitioner has failed to establish the ineffective assistance of appellate counsel based on his attorney's failure to raise an issue regarding unduly suggestive identifications of Petitioner as the gunman.

Claim six is without merit.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit

this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

   *s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**

Date:  March 14, 2011